The opinion of the court was delivered by
Bermudez, C. J.
This is an injunction suit. Its object is to arrest the execution of a judgment rendered by the Supreme Court for’ $3477, on the ground that the same had not been recorded on the-minutes of the District Court after its transmission and before the-issuance of the fl. fa. to have it satisfied.
The defence is that the judgment had been properly filed and recorded previous to the issuance of the writ by the clerk of court.
After hearing, there was judgment dissolving the injunction with $531 as damages.
Prom this judgment the plaintiff in injunction appeals. The defendant therein prays for an increase of the damages to $1000.
The evidence shows that after being filed on July 12, 1889, by the clerk, the judgment rendered on appeal was by him recorded on the same day in a well-bound book,.known as the “ Book of Original Documents,” which might be more properly termed the “judicial record.”
It does not appear that this judgment was recorded on the minutes of the District Court.
The contention is that the judgment should have been recorded in the minute book of the court, although the court was not in session at the time the decree of the appellate court was received, and that the recording of it in the book named is a nullity. It is hence argued that as the judgment could not be executed until it had been properly recorded in the records of the inferior court which had first cognizance of the cause, the judgment creditor had no right to demand and the clerk no right to issue execution on it.
Under the law, as it stood originally, O. P. 620, the recording was-necessarily required to be authorized, or directed by the court, on motion in open court, by the party wishing to make use of the judgment ; but considering that the fulfilment of this prerequisite occasionally proved an inconvenience calculated to obstruct the admin *833 istration of justice in most of the country parishes, in which the courts. were frequently not in session, the Legislature thought it proper and wise to dispense with this idle ceremony, which was purely ministerial, and, in 1852, adopted Act No. 305, p. 206, whereby (Sec. 4) the clerks of the District Courts, except in the parishes of Orleans and Jefferson, were empowered to receive, file and record all mandates and decrees of the Supreme Court in causes taken up by appeal from their respective courts, and to issue all legal process under said mandates and decrees.
Por a like reason and to extend further relief, the Legislature, in 1855, by Act No. 56, See. 5 (R. S. 464), did away with the requirement of this formality generally, dispensing with its observance even in the parishes which had been previously excepted by the Act of 1852.
The provision reads that the clerks shall have power to receive,, file and record all mandates and decrees by the Supreme Court and to issue all legal process thereon.
So that the requirement of anterior direction, by order in open court, to authorize the recording, ceased to have any further existence, the law in other respects remaining substantially as it previously stood.
Article 619 of the old Code of Practice, which has been continued in force and which bears the same number in the R. C. P., alluding to the judgment rendered on appeal by the Supreme Court, provides in negative terms that it shall not be executed until it has been recorded in the records of the inferior court.
There was no law, prior to the Acts of 1852 and of 1855, requiring the judgment of the Supreme Court to be recorded on the minutes of the lower court and none has ever since been adopted for that purpose.
The records to which the article refers, are those which the clerk is bound by law to keep and which are mentioned in Articles 776 and 777 of the Code of Practice and in Section 22 (R. S. 474) of the Act of 1855.
This provision of law received legislative consideration in 1878,, when, by Act 57, it was amended and re-enacted so as to authorize copies from the record, in cases of loss or destruction of originals, in criminal and civil proceedings in court; but the existence of the-book, as a register, and the mandate to bhe clerk to enter therein *834 the pleadings, decrees and judgments in a case, continued in force.
The record required to be kept by Act 777, O. P., is the minute book, which is that in which all the orders and judgments of the District Court are to be entered, while that mentioned in Sec. 22, 474 R. S., and in the Act of 1878, is that in which are to be entered the petition, answer, and orders of court and interlocutory judgments, together with the final judgment of the court rendered thereon.
The following section (23) of the Act of 1855 provides that in case of an appeal it shall be the duty of the clerk to record the pleadings and judgments, as aforesaid, together with the judgment of the district and appellate courts, within six months from the filing of the judgment of the appellate court.
The words “ as aforesaid ” clearly mean that the judgment of the appellate court shall be recorded in the book in which are to be ■entered those of the District Court, so that all might be found therein, •and that book is that mentioned in Section 22 of the Act of 1855, in Section 474 R. S., and in Act 17 of 1878.
It is shown by the evidence that it is in this last book that the .judgment of the Supreme Court, the execution of which was arrested herein, was recorded previous to the issuance of the writ of execution.
This was a full compliance with the legal exigencies, which never required a recording of such judgments on the minutes of the court in which are to be entered only such decrees and judgments as the District Judge renders, and in which the clerk has no authority whatever to make any entry without previous authority and direction by that officer.
The question here is not quite novel. It was raised shortly after the passage of the Act of 1855, in the case of Berlin vs. Gilly, 13 An. 461, which came from Avoyelles, and in which “it appears that without any motion in open court having been made, the decree was recorded in the lower court and an execution issued.”
The court eonsidei’ed that it was not necessary, to move in open ■court to have the decree recorded, because Article 620, O. P., requiring it, had been repealed by the Act of 1855, and the court referred to Section 5 of the statute without however considering Section 23 and determining expressly whether the recording which had been made was that provided for by it.
*835 In the more recent case of Stafford vs. Renshaw, 33 An. 445, the present court alluding to the party benefited by the judgment of the appellate court, said: “ All he had to do was to produce to the lower court an authentic copy of the judgment of the Supreme Court in his favor and to have a writ to issue in furtherance of its behests. That is precisely what he has done. It was useless to obtain any decree for the execution of that judgment. ’ ’
This saying implies that, as a matter of course, the judgment must be recorded as directed by law previous to the issuance of execution.
We therefore conclude that the law did not require that the judgment of the Supreme Court in the instant case should be recorded on the minutes of the lower court, but that it be entered, exactly as it was, in the “Book of Original Documents,” or “Judicial Record Book,” mentioned in Section 22 of the Act of 1855.
We have been atesóme pains in determining the question presented, which had not heretofore been clearly settled, in order that it might hereafter be considered as adjusted.
Under the circumstances, we deem that the allowance of $531 as damages, for arresting, on September 13, 1889, the execution of a judgment for $3477, which bears interest from September 1, 1888, too large, and that it should be reduced to $200, without entering into details as to the items aggregating this amount.
It is therefore ordered and decreed that the judgment appealed from be amended by reducing to $200 the amount of damages awarded, and that, thus amended, it be affirmed; the appellee to pay costs of appeal and appellants those of the lower court.